[Civ. No. 5944. First Appellate District, Division Two.—January 14, 1928.]

E. G. STARR, Respondent, v. M. E. LEE et al., Defendants; K. LUNDEEN, Appellant.

George M. Pierson and E. H. Laubersheimer for Appellant.

Charles W. Fourl and Harry G. Sadicoff for Respondent.

NOURSE, J.—Plaintiff sued upon a contract whereby the defendants agreed to pay him the sum of $5,000 if they failed to commence the drilling of an oil well before a fixed day. Plaintiff had judgment and the defendant Lundeen alone has appealed on a typewritten transcript under section 953 et seq. of the Code of Civil Procedure.

At the time of the execution of the undertaking plaintiff held a lease from the title owners of a lot of land 30x130 feet located in the Signal Hill oil field in the county of Los Angeles. This lease called upon plaintiff to "spud in and commence the actual drilling of a well" within forty days after delivery to him of a certificate showing title to the premises vested in the lessors, to continue drilling with reasonable diligence until oil was found in paying quantities, or until the well should reach a depth of thirty-five hundred feet, and to pay the lessors as royalties sixteen and two-thirds per cent of the proceeds received from the sale of all oil, gas or other hydrocarbon substances extracted. On December 9, 1922, plaintiff and defendants Lundeen and Lee executed an "oil and gas contract" whereby these defendants agreed to commence the drilling of a well upon the premises and to perform all the provisions of plaintiff's lease which were to be performed by him and to pay plaintiff thirty per cent royalty, out of which he was to pay the royalties stipulated to the original lessors. The undertaking upon which the suit is based was executed the same day and, as a part of the same transaction, the plaintiff gave to the defendants certain writings wherein he specified the time for the commencement of work as thirty days after "I show you clear title" and also an easement to the 30x60 feet west of the lot described. This date was left blank at the time of signing the oil and gas contract and also in the undertaking, but the date "25th of January, 1923," was later inserted by agreement, that date being thirty days after certificate of title and easement were shown to defendants. The defendants actually commenced to "spud in" on February 7, 1923, thirteen days after the time called for in their contract and, in order to protect himself from a forfeiture of the lease, plaintiff procured from the owners of

the land an extension of time for performance under his lease.

At the beginning of the trial plaintiff amended his complaint by adding the allegation that at the time of entering into the undertaking "it was impracticable or extremely difficult to estimate the amount of damages which would accrue to plaintiff by reason of the default or failure of defendants, Lee and Lundeen, to spud in an oil well on said property as required . . . for the reason that there was not then, nor at any other time or now, any method or means by which it may be ascertained as to the amount of oil that would be lost to plaintiff by reason of the delay," and for the further reason that plaintiff's lease with the owners of the property would expire on February 3, 1923, unless said work had been commenced. The issue was thus drawn whether the undertaking came within the provisions of section 1671 of the Civil Code permitting the parties to a contract to liquidate the damages for its breach when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages. The trial court found that the allegations of the complaint touching this issue were true and gave judgment for plaintiff on the theory that the damages had been liquidated in a proper case.

On the appeal from the judgment the appellant states his grounds to be that the findings are not supported by the evidence and that the findings do not support the judgment. He does not specify any particular finding which he claims to be unsupported and does not state wherein the findings as a whole fail to support the judgment. The respondent has taken up the burden of printing the evidence tending to show that the contract came within the rule of section 1671 of the Civil Code. It was shown that the time within which appellant and his associate were to commence drilling was but ten days prior to the time when respondent was required to commence drilling under his lease with the owners; that respondent had executed, and deposited in escrow, a quitclaim deed conveying to the owners all his interest in the lease if he failed to commence drilling by the date fixed in the lease; that the land was located in a newly discovered oil field where drilling opera-

tions were proceeding at a feverish pace, many wells being located within forty or fifty feet of each other on small town lots, four or five being within a radius of two hundred feet of the property covered by the contract in suit; that two wells within 250 feet of this property were producing 2000 barrels of oil a day; and that in operations of this kind the well first reaching the oil strata often drained the oil from that level and this made it necessary to drill later wells to a greater depth at an increased expense. On the direct issue of the feasibility of estimating damages for delay in drilling, an expert witness testified that there was no method by which such damage could be estimated because wells in close proximity often drain each other and the one first completed has the advantage in that it opens up certain channels and starts a flow in its direction, but that this is not always true; that "there is no way of telling exactly, or anywhere near exactly, how much of one well's oil another well takes." The appellant has not cited any evidence in conflict with this and merely rests on the statement that this finding is not supported.

The case comes within the rule that if the actual damages are uncertain, or are of a purely speculative character, and the contract furnishes no data for their ascertainment, the provision will, as a rule, be held to be one for liquidated damages. (8 R. C. L., p. 569; *Escondido Oil etc. Co.* v. *Glaser*, 144 Cal. 494, 500 [77 Pac. 1040]; *Huggins* v. *Daley* (C. C. A.), 99 Fed. 606, 609 [48 L. R. A. 320].) In the latter case the court, speaking of the peculiar character of a contract for boring an oil well, said: "There is, perhaps, no other business in which prompt performance is so essential to the rights of the parties, or delays so likely to prove injurious,—no other class of contracts in which time is so much of the essence. There is no other branch of mining where greater damage is done by delay. Coal and precious metals lie either in horizontal veins or in pockets. They remain where they are until removed. Oil and gas are the most uncertain, fluctuating, volatile and fugitive of all mining properties. They lie far below the surface, beyond the control of human will, and beyond the reach of any legal process, whence they may flow unrestrained if the owner of adjoining land bores a well down

348

to the strata which holds them; and there is no law which can provide adequate, or indeed any, compensation for such results. This is a matter of common knowledge, and 'courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction.' Greenl. Ev. sec. 6.''

■ The character of the contract, whether it is to be construed as calling for liquidated damages or a penalty, is to be determined according to the circumstances existing at the time the contract was made, and the fact that at the time of the breach conditions have so changed that it would then be practicable and not difficult to fix the actual damage does not affect the character of the contract. (*Hanlon Drydock etc. Co.* v. *McNear,* 70 Cal. App. 204, 210 [232 Pac. 1002].) ■ It is also unnecessary, in a case of this kind, to show that substantial damage resulted from the breach. (8 R. C. L., pp. 577, 578; *Rispin* v. *Midnight Oil Co.,* 291 Fed. 481 [34 A. L. R. 1331]; *Davidson* v. *Hughes,* 76 Kan. 247 [91 Pac. 913, 914].) We find authorities holding that recovery cannot be had when the evidence shows that no damage at all resulted from the breach, but the rule is not available to the appellant because, when respondent attempted to prove damage, he was foreclosed by appellant's objection that it was immaterial and irrelevant. Appellant cannot now say that the judgment should be reversed because this evidence was not admitted. (*Harp* v. *Harp,* 136 Cal. 421, 424 [69 Pac. 28].)

In his reply brief the appellant has advanced new grounds upon which he insists that the judgment must be reversed. Without exception the arguments are based upon false premises unsupported by evidence from the record. They are all to the same effect—that because such and so is the case the contract is not one coming within the purview of section 1671 of the Civil Code permitting the liquidation of damages. We have discussed the rules of law applicable to the facts as they appear from the evidence which has been brought to our attention and these require an affirmance of the judgment.

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 12, 1928.

All the Justices present concurred.