[Civ. No. 7737. First Appellate District, Division Two.—February 5, 1931.]

## C. W. GRIFFIN et al., Respondents, v. A. H. KENT, Appellant.

John B. Haas and John D. Howe for Appellant.

Knight & Goddard, F. A. Knight and P. H. Goddard for Respondents.

STURTEVANT, J.—The plaintiffs commenced an action against the defendant to recover moneys alleged to be due on an oil lease. The defendant answered and from a

judgment in favor of the plaintiffs the defendant has appealed. In their complaint the plaintiffs pleaded the lease *in haec verba*, and further alleged that certain rentals had accrued and had not been paid. In his answer the defendant made certain denials, but pleaded no affirmative matter.

By way of introduction the plaintiffs call to our attention certain rules governing the construction of written instruments by the court. (Civ. Code, secs. 1636, 1638 and 1641.) The plaintiffs do not contend that the rules referred to are not sound, but they do contend that in the instant case they have no application. ▮ The defendant also contends that the provisions of the contract favorable to one of the parties should be considered as having been inserted and worded by him and that in the event any one of such provisions is ambiguous · it should be construed against him. (13 Cor. Jur. 546.) In reply the plaintiffs call to our attention the testimony of the defendant which was to the effect that he and his associate, Mr. Wall, drew the instrument. The lease, among other things, contained the following provisions:

"Witnesseth: That the said lessors . . . do . . . grant, convey, lease, demise and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and the laying of pipe-lines and building tanks, stations and structures thereon to produce, save and take care of said products, all that tract of land. . . .

"It is Agreed that this lease shall remain in force for a term of five years from date, and as long thereafter as oil and gas, or either of them, is produced upon said land in paying quantities, by said lessee or his assigns. In consideration of the premises the said lessee covenants and agrees as follows:

"1. To deliver to the credit of the lessors (a royalty of ⅛) . . .

"2. If no well be commenced upon the above described land within six months from this date lessee agrees to pay the sum of One Hundred Dollars ($100.00) per month until said well shall be commenced, at which time the $100.00 per month payment ceases, provided the operations are continued faithfully and diligently until well has been drilled to a depth of 3000 feet unless oil or gas is found at a lesser depth,

in paying quantities, but in no event shall the commencement be deferred for a period of more than two years.''

 It does not in any place contain a clause to the effect that under certain circumstances it is to be null and void nor that under certain circumstances either party is to incur a forfeiture, nor does it contain the word ''condition'' or synonym of that word. The lease was dated May 23, 1921. No drilling whatever was done or attempted. It was not disputed that commencing November 23, 1921, and continuously thereafter the defendant paid the stipulated rental each month until February 24, 1924. Neither was it disputed that from that date until May 24, 1926, the defendant had paid no rental. The plaintiffs never attempted to rescind. The trial court awarded judgment for that unpaid rental and interest. The defendant claims that under the terms of the lease he had already paid more rental than he was bound to pay and that no judgment should have been rendered against him. This conclusion is based on the following reasoning: The defendant says it is plain that he obligated himself to drill a well in six months. If he did not do so then he was bound to pay $100 per month until he commenced drilling. However, he asserts that it was provided in the lease that ''in no event shall the commencement (of drilling) be deferred for a period of more than two years''. He says the quoted lease was a prohibition against his entry to drill. He further says that the prohibition *ipso facto* terminated the lease at the end of the period of two years, and he concludes with the statement that the lease being ended no obligation rested on him to pay a rental during the remainder of the term. He cites no authority to sustain this contention. In argument he claims that leases of doubtful duration will be construed favorably to the tenant (35 Cor. Jur. 974). But here there is no doubt. He claims that whatever the term, it may be subject to a condition (5 Elliott, Contracts, p. 651; 1 Thornton, Oil and Gas, p. 171). But as we have shown above, the lease between the parties contained no condition. It might be added that if doubtful language was contained in the lease such doubtful language would be construed as a covenant and not as a condition. (*Cullen* v. *Sprigg*, 83 Cal. 56, 64 [23 Pac. 222].) Plaintiffs cite and rely on *Allen* v. *Narver*, 178 Cal. 202 [172 Pac. 980, 981]. While that case is not parallel in all

of its facts with the case at bar, we think it is controlling. In that case a similar contention was made. The court said: "As said by the court in discussing a like contention in *Woodland Oil Co. v. Crawford,* 55 Ohio St. 161 [34 L. R. A. 62, 44 N. E. 1093], where a great number of cases in support of the proposition are cited: 'A promise to drill a well cannot be satisfied by a failure to drill such well. The proper construction to be placed upon such an agreement is, that upon failure of the lessee to drill a well, or pay the rental, . . . the lessor may elect to put an end to the lease . . . or he may elect to have the lease continued in force to the end of the term, and enforce . . . the payment of rentals, as provided in the lease.' " In the instant case the plaintiffs did not rescind, but they kept the contract alive and sued thereon.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 7, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1931.